Anthony DeFazio
302985 / 573351B
Northern State Prison
168 Frontage Road
Post Office Box 2300
Newark, New Jersey 07114
**Plaintiff, *Pro-Se***



CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2017 NOV -2 P 3: 10

## UNITED STATES DISTRICT COURT
### District of New Jersey

| | |
|---|---|
| Anthony DeFazio, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>Jpay, Inc.,<br><br>　　　　Defendant. | Docket No.:_____<br><br>**CIVIL ACTION**<br><br>**COMPLAINT**<br>**CLASS ACTION** |

## JURISDICTION

1.　This court has jurisdiction over this class action under the provisions of 28 U.S.C. § 1332(d) in that:

　a.　Plaintiff, Anthony DeFazio is a citizen of the State of New Jersey.

　b.　Defendant, Jpay, Inc., a corporation incorporated under the laws of the State of Florida and has its principal place of business at 12864 Biscayne Boulevard, Suite 243, Miami, FL 33181.

c. At least one member of the class of plaintiffs is a citizen of a State different from at least one defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

d. The claims asserted by the plaintiff class, aggregated as required by 28 U.S.C. § 1332(d)(6), exceed the sum of $5,000,000 within the meaning of 28 U.S.C. § 1332(d)(2).

e. The class of unnamed plaintiffs exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

f. The primary defendants are not States, State officials, or other governmental entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

## CLASS ACTION ALLEGATIONS

2. Plaintiff, Anthony DeFazio, brings this action on behalf of himself and all others similarly situated, who are imprisoned in any State Prison; Facility; or Institution in the State of New Jersey, who set up an account, utilized services, made purchases, such as but not limited to, music; JP5mini players; e-stamps; e-books; e-cards; e-games, with JPay, Inc.; or that received an institution infraction directly related to the use of a JPay kiosk or a JP5mini player; without being provided notice of JPay, Inc.'s "Terms of Use" agreement or their policies regarding refunds and/or return procedures prior to use and/or making purchases.

3. Plaintiff, Anthony DeFazio, is informed and believes, and on that basis

alleges, that this class of persons consists of approximately twenty two thousand (22,000) incarcerated persons in the State of New Jersey.

4. The claims set forth in this complaint are common to each and every member of the class.

5. Plaintiff, Anthony DeFazio, is a proper representative of this class of persons because, as will be more fully shown below, plaintiff Anthony DeFazio is a member of the class described in Paragraph 2, above. The claims that He is asserting in this complaint are typical of the claims of all members of the class. The claims of plaintiff Anthony DeFazio are not subject to any unique defenses nor does any interest of plaintiff Anthony DeFazio in this litigation conflict with any other member of the class.

6. Plaintiff Anthony DeFazio contends that the claims set out below are proper for certification as a class action under the provisions of Rule 23 (b)(2) of the Federal Rules of Civil Procedure.

7. The class action is superior to other available methods for the fair and efficient adjudication of the controversy because there are over twenty two thousand (22,000) members in the proposed class; a single litigation will provide superior and more speedy and efficient relief for all of the thousands of members of the class. Repeated individual litigation of the common issues shared by all class members involving relatively small amounts of money, with duplicate costs for thousands of

individual investigators, repetitive formal discovery, and redundant trial preparation and trial will not be productive or efficient, particularly since establishing the violations of JPay, Inc., will be relatively costly and time-consuming when compared to the amount of each, individual claim.

8. On or about December 27, 2012, the State of New Jersey entered into contract with JPay, Inc., to provide services to the inmate prison population of the State of New Jersey, which was approved by the Attorney General on or about February 12, 2013.

9. The contract was through the Multi-State Corrections Procurement Alliance and the National Association of State Procurement Officials, with Nevada being the "Lead State." Under the Nevada Master Service Agreement No. 1901, JPay, Inc., was contracted to provide inmate kiosks throughout the State Prisons in New Jersey and were contracted to offer goods and services to the inmate population in the State of New Jersey.

10. Sometime in July 2015 or soon thereafter, JPay, Inc.'s, inmate Kiosks started to become operational in select State Prisons in New Jersey, slowly rolling out to all State Prisons; Facilities and Institutions.

11. Currently, JPay, Inc., and their kiosks are operational in all of New Jersey's State Prisons.

12. Upon the start of the JPay inmate kiosks being operational inmates were

not provided any information about the kiosks or JPay's services. No instructions or information about the company or how to operate their kiosks or start using the inmate kiosks were provided to the inmate population, either by JPay, or the Prison Administration. Inmates were left to figure it out on their own.

13. Upon the JPay kiosks becoming operational in Northern State Prison the plaintiff and all inmates were able to register to receive a password by entering their SBI# into the kiosk so they could later set up an account with JPay, Inc.

14  Inmates in Northern State Prison and throughout the State were able to begin to make purchases of merchandise and services from JPay, Inc., after they set up an account.

15. In JPay, Inc.'s proposal and contract, RFP No. 1901, JPay, had described and pictured a MP3 Player, listing the price as $39.99 for the Basic 4GB of memory; $49.99 for additional memory - 8GB; and $59.99 - for 16GB of memory; the company also described and pictured what they called a JP5 tablet that they would provide to inmates for a price of $119.99.

16. JPay, Inc. would also pay to the State a kickback of $0.05 for every outbound eMessage; 5% of music purchases; $5.00 for each MP3 Player purchase; $10.00 for each JP5 tablet purchase and $0.50 per inbound transfer of funds.

17. The only merchandise that the plaintiff, inmates in Northern State Prison and throughout the State were able to purchase was what was advertised on the JPay

kiosk as the JP5. However, when the goods arrived to the plaintiff and inmates that made a purchase of the JP5, the product was not the JP5 tablet as described and pictured in the RFP No. 1901, but rather a JP5mini player and others had received what was marked as JP4.

18. JPay, Inc. never informed inmates that the JP5 they were selling inmates in New Jersey was actually a JP5mini player and not the JP5 tablet in their contract RFP 1901.

19. Many of the JP5mini players provided by JPay, Inc. were defective. The plaintiff, as well as other inmates that purchased a JP5 tablet and received a JP5mini player that was defective, was denied a refund when requested.

20. Prior to making a purchases from JPay on the kiosk, JPay, Inc. never informed or provided notice to the plaintiff or any inmates in Northern State Prison and throughout the State of the company's policy on refunds prior to setting up an account; utilizing services; making purchases, such as but not limited to: music; JP5's; e-stamps; e-books; e-cards; and e-games, with JPay, Inc..

21. On or about August 21, 2017, the plaintiff, and all inmates in Northern State Prison and throughout the State were denied access and locked out of the JPay kiosk; and their JPay account, when the JPay, Inc, for the first time since the initial launch sometime in June 2015 or soon thereafter, posted the company's "Terms of Use" agreement.

22.     JPay, Inc.'s "Terms of Use" agreement provided information and notice for the first time that all money transferred to the JPay media account for purchases are non-refundable.

23.     The "Terms of Use" agreement also provided information and notice for the first time that any misuse of the JPay kiosk and/or their JP3; JP4; JP5; JP5s; or JP5mini player, would subject an inmate to possible legal and/or disciplinary action; that ALL communications and correspondence through the kiosk is subject to monitoring, recording, interception and disclosure and not protected by Attorney-client privilege; that JPay, Inc., is authorized to deduct funds from your media account because of dispute; legal process; fees or similar reasons; and that they disclaim all warranties.

24.     The "Terms of Use" agreement locked all inmates out of the kiosk and had to be accepted by the plaintiff and every inmate throughout the State if they wanted to gain access to the kiosk; or their JPay account to read or write their e-messages; administrative inquiries / grievances; or download music or news that was previously purchased.

25.     If an inmate does not click on the "accept" button of the "Terms of Use" agreement they will never be allowed access to their pre-existing accounts and they lose the benefit of all purchases previously made as the JP5mini players lock if not regularly synced to the kiosk and cannot read or write any e-messages or view their

family photos or e-newspaper purchases.

26. The plaintiff, as well as other inmates in Northern State Prison and throughout the State have not accepted the "Terms of Use" since JPay, Inc., first posted the terms on or about August 21, 2017, and have since been denied access to the kiosk and all services previously used and purchased.

27. The plaintiff, as well as other inmates in Northern State Prison and throughout the State that have not accepted the terms are being prevented from accessing the non-commercial side of the kiosk where an inmate may contact administration; thus, JPay, Inc. is interfering with and denying plaintiff and all inmates from being able to write administrative inquiries or grievances unless they accept the "Terms of Use" agreement.

28. Defendant's have wrongly withheld the company's "Terms of Use" agreement for two years containing consumer information required by law to be disclosed; and wrongly locked all inmates out from the kiosks and personal accounts unless they accept the unfair and one sided "Terms of Use" agreement constitute fraudulent and deceptive practices.

## FIRST CLAIM FOR RELIEF

29. Plaintiff repeats and realleges paragraphs 1-28.

30. Defendant's failure to inform or provide notice to the plaintiff and others similarly situated of the company's refund policy violate the New Jersey Consumer

Fraud Act N.J.S.A. § 56:8-1 et seq.; and the New Jersey Refunding Policy Disclosure Act N.J.S.A. § 56:8-2.14 et seq..

## SECOND CLAIM FOR RELIEF

31. Plaintiff repeats and realleges paragraphs 1-28.

32. Defendant's failure to inform or provide notice to the plaintiff and others similarly situated of the company's "Terms of Use" policy violate the New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1 et seq..

## THIRD CLAIM FOR RELIEF

33. Plaintiff repeats and realleges paragraphs 1-28.

34. Defendant's willful failure to inform or provide notice to the plaintiff and others similarly situated that the JP5 that JPay was selling New Jersey inmates was not the JP5 tablet, 7" screen, which was described and pictured in the contract RFP No. 1901, but instead was a JP5mini player violate the New Jersey Consumer Fraud Act N.J.S.A. § 56:8-1 et seq.

## *JURY DEMAND*

35. Plaintiff demands trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable by jury.

## **REQUEST FOR RELIEF**

The plaintiff on behalf of himself and the class, demand judgment as follows:

A.  Declaring this action to be a proper class action maintainable under rule 23.

B.  That the plaintiff and the members of the plaintiff class be awarded treble damages, as a result of defendant's wrongful acts, in an amount to be determined at trial, but in no event less than the jurisdictional minimum, together with interest, costs, reasonable attorneys fees, expert fees, and other reasonable costs in accordance with N.J.S.A. § 56:8-19; Fed. R. Civ. P. 23(h)

C.  Awarding Plaintiff and members of the plaintiff class punitive damages in the amount of $5,000.00 each.

D.  Granting any member of the plaintiff class that was found guilty of a kiosk or JP5 related institutional infraction an additional punitive damage award in the amount of $1,000.00.

E.  An Order directing defendant to refund all funds transferred to defendant by plaintiff and all members of the plaintiff class in accordance with N.J.S.A. § 56:8-2.11; 56:8-2.12; and

F.  Further ordering defendant to provide a printout of all plaintiff's and all members of the plaintiff class'; e-messages; photos; Administrative Inquiries/Grievances; and clearing/erasing/deleting plaintiff's and all members of the

plaintiff class' JPay accounts; and

G. Further ordering defendant to provide plaintiff and all members of the plaintiff class access to the administrative / institutional side of the inmate kiosk to write inmate grievances without having to "accept" the "Terms of Use" agreement and restricting the "Terms of Use" agreement to only the commercial side of the kiosk; and

H. Further ordering injunctive relief by restraining JPay, Inc. from disclosing any Communication; Photo; and/or Correspondence of the plaintiff and all members of the plaintiff class whom never accepted the "Terms of Use" agreement prior to using the kiosks.

I. Any and all other relief to which the plaintiff and members of the plaintiff class may be entitled.

Dated: October 13, 2017

_Anthony DeFazio_
Anthony DeFazio
Plaintiff, ***pro-se***